UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| RAUL AGUIRRE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | No. CV 10-05764-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

    Plaintiff raises the following issues:

    1.    Whether the Administrative Law Judge ("ALJ") erred when he

|   |   |
|---|---|
| 1 | failed to find Plaintiff's radiculopathy, plantar fasciitis and peripheral neuropathy to be medically determinable impairments (JS at 3); |
| 4 | 2. Whether the ALJ properly assessed Plaintiff's credibility (JS at 9); |
| 6 | 3. Whether the ALJ properly considered the opinion of Plaintiff's treating physician (JS at 18); and |
| 8 | 4. Whether the ALJ considered the additional impact of Plaintiff's obesity on Plaintiff's residual functional capacity (JS at 24). |

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

I

**THE ALJ ERRED IN FAILING TO FIND PLAINTIFF'S RADICULOPATHY, PLANTAR FASCIITIS AND PERIPHERAL NEUROPATHY TO BE MEDICALLY DETERMINABLE IMPAIRMENTS**

At Step Two of the sequential evaluation process (described in the ALJ's decision at AR 17-18), the ALJ found that under 20 C.F.R. §404.1520(c), Plaintiff had degenerative joint disease, and diabetes mellitus. (AR 18-19.) While the ALJ used the expression "medically determinable impairments," his cite to 20 C.F.R. §404.1520(c) indicates that he was referencing "severe" impairments, defined as those which "significantly limit(s) your personal or physical mental ability to do basic work activities." (See 20 C.F.R. §404.1520(c).)

2

The ALJ's decision, however, also discusses the term "medically determinable impairment." The definition of "medically determinable impairment" is set forth in 20 C.F.R. §404.1508, which defines the term as an impairment which results from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."

Thus, although a "severe impairment" is not the same as a "medically determinable impairment," the ALJ utilized these terms interchangeably in his decision. The Commissioner attempts to resolve this problem by arguing that the ALJ considered all medically determinable impairments in the disability evaluation process, whether found to be severe or not severe. (See JS at 6, et seq.) The problem with this analysis, however, is that the body of the decision clearly indicates that the ALJ did not find the existence of radiculopathy, peripheral neuropathy, or plantar fasciitis to have been established in Plaintiff's case. This is more than evident from the language in the decision. As to the non-existence of radiculopathy, the discussion at AR 19 makes the point. As for plantar fasciitis, the ALJ dismisses the existence of this condition at AR 19-20. Finally, as to peripheral neuropathy, this impairment is dismissed as non-existent at AR 20.

A "severe" impairment, as defined in 20 C.F.R. §404.1520(a)(4)(ii), is a Step Two finding which is classically described as a "de minimis screening device" used to eliminate groundless claims. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). In Plaintiff's case, however, there is substantial evidence in the record indicating that the disputed impairments are indeed severe, and would appear to cause more than a minimal effect as defined in the

regulations. In the JS, Plaintiff accurately summarizes these references, which the Court need not repeat in detail. Suffice it to say that Plaintiff has often complained to his doctors, for a sufficiently lengthy period, of pain and other symptomology from these conditions, and they have been noted in the medical records under diagnostic categories. Indeed, on July 11, 2008, his treating physician at Kaiser Permanente, Dr. Hua, indicated that Plaintiff has been having "moderate to severe pain of both legs due to diabetes neuropathy and degenerative joint disease. He is unable to stand or walk for a long time due to his medical conditions." (AR 344.)

The ALJ relied upon the opinion of consultative internist Dr. Sedgh to establish Plaintiff's residual functional capacity ("RFC"), based on Dr. Sedgh's one-time evaluation of Plaintiff conducted on February 20, 2008. (AR 24, 237-41.) But Dr. Sedgh had not reviewed any of Plaintiff's medical records before indicating his opinion, and failed to perform a physical examination of Plaintiff's feet, instead basing his RFC assessment on limitations from low back pain and sciatica pain. (Id.) It is difficult to understand, therefore, how Dr. Sedgh could have factored in the three subject impairments within his opinion. Furthermore, the ALJ chose to accept Dr. Sedgh's opinion over that of the treating physician, Dr. Hua, in part because of his disagreement with Dr. Hua's conclusions regarding Plaintiff's diabetes neuropathy and degenerative joint disease. As the ALJ stated, "I find that the [Plaintiff] fails to establish peripheral neuropathy as medically determinable." (AR 24.) How, then, would it be reasonable to agree with the Commissioner's contention that the ALJ in fact included these other impairments in reaching his disability assessment?

4

There is, as noted, a meaningful difference between the term "medically determinable impairment" and "severe" impairment. Bypassing those differences, and conflating those two terms, can only lead to ambiguity, at the least, or error, as in this case. That error mandates a remand for further hearing to determine the Step Two severe impairments.

II

**THE ALJ'S CREDIBILITY FINDINGS AS TO**

**PLAINTIFF'S SUBJECTIVE PAIN CANNOT BE SUSTAINED**

In Plaintiff's second issue, he asserts that the ALJ failed to properly assess his credibility. The ALJ found that Plaintiff's subjective pain statements were not "entirely credible." (AR 22.)

Evidence in the record, much of it from Plaintiff's own testimony at the administrative hearing, was that his legs hurt after driving a car; that he has burning pain in his feet that travels to his knees after ten minutes standing up; that his left leg hurts; that he does not take ibuprofen in excess because of its effects on his liver, and that he tries to deal with his pain as much as he can. (AR 41, 42, 45.) He used orthotics and a cane at times because of his foot pain (AR 47, 54), and he has numbness and tingling in his feet (AR 70). Because of foot pain, he cannot sleep well at night, and he has some balance problems. (AR 71-83, 84, 85-87.)

The ALJ correctly noted the requirements of Social Security Regulations and court precedent regarding evaluation of a claimant's credibility. In particular, evaluation of subjective pain is governed by the requirements of 20 C.F.R. §404.1529, and Social Security Regulations ("SSR") 96-7p. (See also AR 21.) But the ALJ discredited

Plaintiff's description of his subjective symptoms because he found Plaintiff's treatment history to be inconsistent with such limitations (AR 23); that Plaintiff's use of pain medication is inconsistent with the extent of his complaints (Id.); and that Plaintiff exercises at the gym (Id.). None of these reasons meet the legal standard, as the Court will discuss.

First, Plaintiff has a more significant treatment history than the ALJ allowed. He received several diagnostic studies of his right foot which indicated a level of severe degenerative disc disease in the right great toe, and degenerative disc disease of the thoracic and lumbar spine, including radiculopathy in the lower extremities. (AR 180 236, 251, 313.) Plaintiff also has limitations that result from his diagnosed diabetes, hypertension, peripheral neuropathy, and plantar fasciitis. (AR 287, 308.) Plaintiff received orthotics, cortisone injections, and was referred for surgery for his foot pain. (AR 266, 277, 304, 315.) He was prescribed a variety of medications to deal with these issues. (AR 44, 46, 187, 285, 306.)

As to Plaintiff's use of pain medication, although he takes ibuprofen on a sporadic basis, Plaintiff testified that he has intentionally reduced the amount he takes because of its perceived effect on his liver. (AR 45.) Further, as noted, Plaintiff takes a variety of prescribed pain medications, which the ALJ did not adequately consider in his credibility evaluation. Even as to side effects from medication, while the ALJ discounted that because he concluded that Plaintiff failed to mention it to his doctors, as Plaintiff's counsel correctly notes, there is evidence that in March 2006, Plaintiff complained of lightheadedness from his blood pressure medication. (AR 189.)

Finally, the decision repeats an error that the Court has found in other cases, where an ALJ seizes upon a Plaintiff's periodic statements to his doctors that he is "doing well" as a reason to find decreased credibility as to subjective pain. The meaning of such a statement is so ambiguous as to defy definition. It is almost akin to the standard response to the question "how are you doing?", which is "fine," when the true answer may in fact be just the opposite. Such statements should be rejected in the credibility analysis, unless they are fully consistent with medical records, which in this case, they are not. Further, utilizing Plaintiff's attempt to exercise at a gym, which he does pursuant to his doctor's recommendation, is no reason to reject his credibility. People who are in pain may well be assisted by attempting some reasonable exercise. Certainly, Plaintiff's doctors thought this was the case when they advised him to do just that.

Moreover, as Plaintiff's counsel correctly notes, the ALJ concluded that on an occasion when Plaintiff received immediate relief from a cortisone injection, this equated to long-term pain relief. This would not appear to be the case, as Plaintiff later reported that he continued to experience foot pain. (AR 251, 235-237.) Further, whether Plaintiff sometimes forgets his cane in the car is not a discrediting statement, in that he reported that he only sometimes uses a cane. (AR 301.)

On remand, Plaintiff's credibility will be reassessed according to applicable evaluative standards as set forth in regulations and case law.

//

//

## III

## THE ALJ DID NOT CORRECTLY EVALUATE THE OPINION
## OF PLAINTIFF'S TREATING PHYSICIAN, DR. HUA

The ALJ specifically rejected the opinion of Plaintiff's treating physician, Dr. Hua, in favor of that of the opinion of one-time consultative examiner Dr. Sedgh. (AR 24-25.) It appeared to be a significant concern to the ALJ that Dr. Hua had personally seen Plaintiff only five times, and one of those visits was to review medication. (AR 25.) The ALJ concluded that Dr. Hua failed to demonstrate "such an intimate knowledge of the [Plaintiff's] condition that her opinion should be entitled to enhanced weight." (AR 25.) The logic of this conclusion is difficult to accept, when clearly, Dr. Sedgh examined Plaintiff on only one occasion, and as the Court has noted, even at that, failed to review significant and relevant medical records. In any event, this reasoning would appear to ignore the fact that Plaintiff was treated at Kaiser Permanente, where patients often receive treatment from a panoply of doctors and other medical sources. It would certainly appear that Dr. Hua would have had access to all of that information in formulating her opinions, and not just have relied upon her own examinations. Nevertheless, the ALJ fails to acknowledge this likely scenario. While the Commissioner is correct in noting that the ALJ need not accept the conclusions of a treating physician, nor is an ALJ mandated to even give greater weight to a treating physician than to a consultative examiner, nevertheless, the basis for such a choice must be grounded in "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). In this case, that standard was not met, and the Court would likely conclude that the reasoning underlying the ALJ's determination to accept the opinion

of the consultative examiner over that of the treating physician and, indeed, the treating institution, was not even supported by specific and legitimate reasons.

On remand, the opinion of the treating physician will be evaluated in light of the applicable standards set forth in this Opinion.

## IV

### ANY IMPACT ON PLAINTIFF'S SEVERE IMPAIRMENTS FROM HIS OBESITY WILL BE REEVALUATED ON REMAND

The Court will only devote brief attention to Plaintiff's fourth issue, in which he asserts that the ALJ failed to properly assess the impact of his obesity on his impairments. As the Court has noted, the ALJ failed to find a number of impairments to be severe, or even medically determinable. As such, any impact of Plaintiff's obesity on these impairments will of necessity have to be reevaluated on remand, especially if the impairments are found to be severe. Whether alone or in combination, these impairments may be exacerbated by Plaintiff's obesity.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: April 28, 2011          /s/
                               VICTOR B. KENTON
                               UNITED STATES MAGISTRATE JUDGE